VIACOM INTERNATIONAL INC., Plaintiff and Counterclaim Defendant Below, Appellant,

v.

Walter A. WINSHALL, in his capacity as the Stockholders' Representative, Defendant and Counterclaim Plaintiff Below, Appellee.

No. 513, 2012.

Supreme Court of Delaware.

Submitted: May 8, 2013.
Decided: July 16, 2013.

Stephen P. Lamb, Esquire, Paul, Weiss, Rifkind, Wharton & Garrison LLP, Wilmington, Delaware; Of Counsel: Leslie Gordon Fagen, Esquire and Robert A. Atkins, Esquire (argued), Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, New York; and John H. Longwell, Esquire, Paul, Weiss, Rifkind, Wharton & Garrison LLP, Washington, D.C. for Appellant.

Gregory V. Varallo, Esquire and Scott W. Perkins, Esquire, Richards, Layton & Finger, P.A., Wilmington, Delaware; William B. Chandler, III, Esquire, Wilson Sonsini Goodrich & Rosati, P.C., Georgetown, Delaware; Of Counsel: David M. Schiffman, Esquire (argued), Linton J. Childs, Esquire and Leah K. Holt, Esquire, Sidley Austin LLP, Chicago, Illinois for Appellee.

Before STEELE, Chief Justice, BERGER, JACOBS and RIDGELY, Justices and VAUGHN, President Judge,[*] constituting the Court en Banc.

BERGER, Justice:

In this appeal we consider whether an arbitration determination should be vacated because the arbitrator refused to consider certain evidence and because the arbitrator lacked authority to decide whether a particular issue was arbitrable. In several similar cases, the Court of Chancery has resolved the arbitrability question inconsistently. In this case, the trial court held that neither claim provided a basis to vacate the arbitration determination. We agree and affirm.

## Factual and Procedural Background

This dispute arises out of a 2006 Agreement and Plan of Merger (Merger Agreement) under which Viacom International, Inc. agreed to cash out the stockholders of Harmonix Music Systems, Inc. Viacom paid $175 million at closing, and agreed to make additional "Earn–Out" payments based on Harmonix's financial performance in 2007 and 2008. Walter A. Winshall, the designated stockholder representative, disputed the 2008 Earn–Out Statement calculated by Viacom. As provided in the Merger Agreement, Winshall set forth each of his disagreements in a 2008 Summary of Issues.

The parties were unable to resolve all of their disagreements, so they submitted the Earn–Out Disagreements (the unresolved items from the 2008 Summary of Issues) to BDO USA LLP, the selected Resolution Accountants ("BDO"). The December 8, 2010 BDO Engagement Letter specified the manner in which Viacom was to produce additional documents; the dates on which initial and reply submissions were due; the manner in which BDO could submit and receive answers to substantive questions prior to the hearing; and the manner in which the hearing would be conducted.

In their initial pre-hearing submissions, the parties focused on the propriety of Viacom's deductions for the costs of unsold inventory. Viacom argued in its reply submission that, if it could not properly deduct the costs of Harmonix's unsold inventory, it could account for that inventory by taking an inventory write-down deduction. Winshall argued that, because the inventory write-down was not included in the 2008 Earn–Out Statement, it could not

---

[*] Sitting by designation pursuant to art. IV, § 12 of the Delaware Constitution and Supreme Court Rules 2 and 4(a) to fill up the quorum as required.

be considered. BDO noted that the inventory write-down, and other issues that were included in the parties' submissions, did not appear to be included in the Earn–Out Disagreements. As a result, BDO asked the parties whether they agreed to have BDO consider those matters in reaching its determination. They did not.

BDO issued its decision in December 2011. It agreed with Winshall that the costs of unsold inventory should not be deducted from net revenue. BDO did not consider the inventory write-down because the parties did not agree to add that issue as an Earn–Out Disagreement, and because Viacom had not identified the inventory write-down in its 2008 Earn–Out Statement. BDO also refused to consider all other issues that were not presented, as required by the Merger Agreement, in the initial documents (Viacom's 2008 Earn–Out Statement, Winshall's 2008 Summary of Issues, and the resulting Earn–Out Disagreements). BDO determined that the 2008 Earn–Out was $298 million.

Viacom filed this action two weeks after BDO's decision. The complaint alleges that BDO's determination disregarded the terms of the Merger Agreement, and failed to consider Viacom's arguments. In addition, it alleges that Winshall breached the Merger Agreement by refusing to consent to BDO's consideration of Viacom's arguments and evidence. The complaint seeks a declaration vacating BDO's determination on the ground that it constitutes manifest error. The complaint also seeks other, related relief. Both parties moved for summary judgment. The Court of Chancery granted Winshall's motion, denied Viacom's motion, and confirmed

BDO's determination that the 2008 Earn–Out due is $298,813,095. This appeal followed.

## Discussion

The parties agree that Viacom's challenge to the BDO determination is governed by the Federal Arbitration Act ("FAA").[2] Under the FAA, an arbitration may be vacated only in very limited circumstances. Section 10 provides that:

a) In any of the following cases the . . . court . . . may make an order vacating the award upon the application of any party to the arbitration—

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.[3]

Viacom argues that the decision should be vacated under § 10(a)(3) because BDO's refusal to hear pertinent and material evidence rendered the arbitration fundamentally unfair. Specifically, the "misconduct" was BDO's refusal to hear or

---

**2.** 9 U.S.C. § 1 *et seq.* In its complaint, Viacom asserted that the BDO proceeding was not an arbitration because the Merger Agreement states that the Resolution Accountants "shall be deemed to be acting as experts and not as arbitrators." Appellant's Appendix, A–18, Merger Agreement § 2.4(c). Viacom abandoned that argument in the Court of Chancery, and has not raised it in this Court.

**3.** 9 U.S.C. § 10(a).

consider Viacom's evidence that the 2008 Earn–Out should include an inventory write-down to reflect the diminished value of unsold goods. Viacom stresses the fact that BDO asked for permission to address this issue, but that Winshall refused. As a result, BDO expressly limited its analysis to, "those Earn–Out Disagreements for which the Parties have agreed that both the issue and the amount are properly before the Resolution Accountants." [4] BDO's refusal to consider the inventory write-down, according to Viacom, was not a decision as to the scope of the arbitration. It was simply an unfair exclusion of very significant evidence that would have had a $200 million impact on the calculation. If BDO's exclusion of the inventory write-down evidence is deemed to have been a decision on arbitrability, Viacom contends, the court, not BDO, should have made that decision.

The claim that BDO's exclusion of evidence was "misconduct" under the FAA lacks merit. "Every failure of an arbitrator to receive relevant evidence does not constitute misconduct requiring vacatur of an arbitrator's award." [5] Courts have found misconduct, for example, where arbitrators refused to await the testimony of a key witness who was temporarily unavailable because his wife had a recurrence of cancer.[6] In another case, the arbitrator misled one party into believing that evidence substantiating its claim had been admitted as a business record, and then refused to consider that evidence because it was hearsay.[7] By contrast, no misconduct was found where arbitrators ignored claims that one party manipulated the availability of a witness, thereby limiting its ability to present its case. "Because the panel interpreted the contract ... on a basis that rendered [the witness's] testimony irrelevant, it did not fundamentally err in declining further action on that issue." [8]

BDO did not ignore any relevant evidence. Rather, it decided that evidence concerning an inventory write-down could not be considered, absent consent of the parties, because that issue was not identified in the original documents governing the scope of the arbitration. There was no misconduct, even if BDO's decision on that issue was incorrect.[9]

Viacom argues next that the trial court erred in: a) finding that BDO decided the arbitrability of the inventory write-down issue; and b) according deference to that determination. Viacom points out that BDO offered to consider the inventory-write down, "if it is adjudicated by a court that those disagreements may be asserted under the Merger Agreement and should be resolved by the Resolution Accountants." [10] BDO's offer, according to Viacom, was an acknowledgment that BDO did not decide arbitrability.

4.  Appellant's Appendix, A–532 Resolution Accountants' Determination at 1.

5.  *Hoteles Condado Beach, La Concha and Convention Center v. Union de Tronquistas Local 901*, 763 F.2d 34, 40 (1st Cir.1985).

6.  *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2nd Cir.1997).

7.  *Gulf Coast Industrial Workers Union v. Exxon Company, USA*, 70 F.3d 847, 850 (5th Cir.1995).

8.  *Forsythe Int'l, S.A. v. Gibbs Oil Co. of Texas*, 915 F.2d 1017, 1023 (5th Cir.1990). *See, also: Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 559 (3rd Cir.2009) (Panel found that evidence was irrelevant.).

9.  *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d at 557.

10.  Appellant's Appendix, A–706.

We read it differently. BDO offered to consider "Other Disagreements" if a court were to reject its determination that those disagreements are outside the scope of the arbitration. BDO repeatedly explained why it did not consider the inventory write-down:

> The Parties dispute various matters related to the transaction covered by the Merger Agreement.... The Resolution Accountants have made this determination on *all issues and amounts which have been submitted in accordance with the terms of the Merger Agreement and the Engagement Letter.* During this dispute resolution process, the Parties have advanced differing views regarding the disagreements properly before the Resolution Accountants for determination.... *Any issue or amount which differed from the 2007 or 2008 Summary of Issues ... and any additional or alternative reduction of Gross Profit in the 2007 or 20008 Earn–Out Statement ... has not been resolved by the Resolution Accountants at this time.*[11]

In its conclusion, BDO reiterated:

> Neither the Merger Agreement nor the subsequently negotiated Engagement Letter provided for the emergence of the Parties' Other Disagreements to create authority for the expansion of the scope of the Resolution Accountants.[12]

BDO's unwillingness to consider the inventory write-down issue was based on its interpretation of the arbitration process, as set forth in the Merger Agreement and the Engagement Letter. BDO did not expressly state that the inventory write-down issue is not arbitrable, but that is exactly what it decided.

■ In arguing that the trial court should not have deferred to BDO's decision to exclude the inventory write-down, Viacom contends that the issue is one of substantive arbitrability, which should be decided by a court, not an arbitrator. The Court of Chancery succinctly explained the difference between substantive and procedural arbitrability:

> In determining whether a claim is subject to arbitration, the court must distinguish between issues of "substantive arbitrability" and "procedural arbitrability." Issues of substantive arbitrability are gateway questions relating to the scope of an arbitration provision and its applicability to a given dispute, and are presumptively decided by the court. Procedural arbitrability issues concern whether the parties have complied with the terms of an arbitration provision, and are presumptively handled by arbitrators. These issues include whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, as well as allegations of waiver, delay, or a like defense to arbitrability.[13]

Under settled federal law, "questions of substantive arbitrability are limited to the narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter...."[14] "[O]nly when there is a question regarding whether the parties should

---

11. Appellant's Appendix, A–532, 533 (Emphasis added.).

12. Appellant's Appendix, A–705.

13. *Viacom International, Inc. v. Winshall*, 2012 WL 3249620, at *12 (Del.Ch.) (Citations omitted.).

14. *Viacom* at *15 (Quoting *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964).) (Quotations omitted.).

be arbitrating at all is a question of arbitrability raised for the court to resolve." [15] "[O]nce it is determined ... that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions that grow out of the dispute and bear on its final disposition should be left to the arbitrator." [16] Under the Merger Agreement, the parties agreed to arbitrate the 2008 Earn–Out, and in the Engagement Letter, the parties agreed to the manner in which BDO would conduct the arbitration. BDO followed its instructions, and decided that the inventory write-down could not be considered because it was not properly presented. That was an issue of procedural arbitrability, properly decided by the arbitrator.

We note that other Court of Chancery decisions have addressed very similar post-closing financial disputes, and have concluded that they presented questions of substantive arbitrability for resolution by the court. In *HDS Inv. Hldg. Inc. v. Home Depot, Inc.*, [17] for example, a purchase and sale agreement provided for an adjustment to the purchase price based on the working capital of the acquired company on the day before closing—the Applicable Amount. Disputes over the Applicable Amount were to be decided by an arbitrator, based only on the parties' presentations, and only with respect to the remaining disputed issues. One party wanted the arbitrator to consider a revised closing statement that was submitted after the deadline set forth in the agreement. The Court of Chancery held that the arbitration provision was narrow, and that the court should decide "contractual issues" about whether the late closing statement could be considered by the arbitrator. [18]

Similarly, in *Nash v. Dayton Superior Corp.*, [19] the acquired company's stockholders were entitled to post-closing adjustments based on the closing balance statement. Disputes were to be resolved by a process almost identical to the one set forth in the Viacom Merger Agreement. A stockholder complained that the acquiror impermissibly added new items to the closing balance statement during the dispute resolution process. The court held that the attempted revision of the closing balance statement was not "clearly arbitrable." [20]

Decisions like *HDS* and *Nash* misconstrue the distinction between procedural and substantive arbitrability. [21] Whether an arbitration provision is branded "narrow" or "broad," the only question that the court should decide is whether the subject matter in dispute falls within it. If the subject matter to be arbitrated is the calculation of an earn-out, or the amount of working capital, or the company's net worth at closing, all issues as to what financial or other information should be considered in performing the calculation are decided by the arbitrator. In resolving those issues, the arbitrator may well rely on the terms of the underlying agreement, and the arbitrator's interpretation of the contract is likely to affect the scope of the arbitration. Nonetheless, those deci-

**15.** *Certain Underwriters at Lloyd's London v. Westchester Fire Ins. Co.,* 489 F.3d 580, 585 (3rd Cir.2007) (Quotations and citations omitted.).

**16.** *John Wiley & Sons,* 376 U.S. at 557, 84 S.Ct. 909.

**17.** 2008 WL 4606262.

**18.** *Id.* at *8.

**19.** 728 A.2d 59 (Del.Ch.1998).

**20.** *Id.* at 64.

**21.** The holdings in *HDS* and *Nash,* and any other decisions consistent with them, are overruled.

sions fall within the category of procedural arbitrability. They are not "gateway" issues about whether the particular dispute should be arbitrated at all. Rather, they are questions about how the subject of the arbitration should be decided.

Viacom's remaining argument, which is based on a mistaken premise, also fails. Viacom assumes that the trial court should have decided whether the inventory write-down was properly before the arbitrator. But that is an issue of procedural arbitrability, which should have been, and was, decided by BDO. It, therefore, does not matter whether the trial court misread the Merger Agreement. The parties agreed to resolve the Earn–Out dispute, and the subsidiary inventory write-down issue, through arbitration. The trial court's support of BDO's analysis is irrelevant.

### Conclusion

Based on the foregoing, the decision and judgment of the Court of Chancery is hereby AFFIRMED.