COURT OF CHANCERY
OF THE
STATE OF DELAWARE

TAMIKA R. MONTGOMERY-REEVES
VICE CHANCELLOR

LEONARD WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

Date Submitted: November 15, 2018
Date Decided: January 25, 2019

Steven T. Margolin, Esquire
Benjamin J. Schladweiler, Esquire
Samuel L. Moultrie, Esquire
Greenberg Traurig, LLP
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801

David A. Felice, Esquire
Bailey & Glasser, LLP
2961 Centerville Road
Suite 302
Wilmington, DE 19808

RE:    *Agiliance, Inc. v. Resolver SOAR, LLC*
       Civil Action No. 2018-0389-TMR

Dear Counsel:

This letter opinion addresses Plaintiff's Motion for Summary Judgment. Plaintiff seeks to compel Defendant to arbitrate disputes over the net working capital of the assets that Defendant bought from Plaintiff. Defendant resists arbitration, arguing that the parties agreed to an expert determination of certain narrow disputes, not to binding arbitration. For the reasons that follow, I hold that the asset purchase agreement at issue requires the parties to arbitrate their dispute, and I grant Plaintiff's motion for summary judgment.

## I.    BACKGROUND

I draw the facts below from the pleadings and the evidence submitted by the parties.[1]  The facts I cite are undisputed.

Agiliance, Inc. ("Agiliance") is a Delaware corporation involved in the enterprise risk intelligence software business.[2]  On October 16, 2017, Agiliance and Resolver SOAR, LLC ("Resolver") entered into an Asset Purchase Agreement (the "Agreement") under which Resolver purchased substantially all of Agiliance's assets.[3]  The Agreement provides for a post-closing adjustment to the purchase price based on net working capital (the "Net Working Capital") in case there are differences between the preliminary net working capital reported by Agiliance during negotiations and the closing date net working capital recorded by Resolver.[4]

Section 2.7 of the Agreement creates a process for the parties to resolve any disputes about Net Working Capital.[5]  Section 2.7(b) of the Agreement requires Resolver to "furnish to [Agiliance] a statement setting forth the Net Working Capital

---

[1]    *See* Ct. Ch. R. 56(c).

[2]    Compl. 1.

[3]    *Id.*

[4]    *Id.* at 2.

[5]    Fantuzzi Aff. in Supp. of Pl.'s Mot. for Summ. J. ("Fantuzzi Aff.") Ex. A § 2.7.

as of immediately prior to the [c]losing."[6] Section 2.7(b)(i) requires the parties to work in good faith to resolve any disputes and allows Agiliance to object to Resolver's statement of Net Working Capital within thirty days so long as Agiliance "provides specific written notice (which objection shall state in reasonable detail the basis of [Agiliance]'s objections and [Agiliance]'s proposed adjustments)."[7]

Section 2.7(b)(ii) provides a procedure to resolve disputes that the parties cannot resolve themselves.[8] It requires that "[i]f [Agiliance] and [Resolver] do not reach . . . written agreement . . . , then such disagreement shall be submitted for arbitration by a nationally-recognized accounting firm that agrees to use its best efforts to complete such arbitration within thirty (30) days."[9] It states that "[Resolver], on the one hand, and [Agiliance], on the other hand, will submit a proposed" Net Working Capital calculation to the nationally-recognized accounting firm (the "Accounting Firm").[10] "The scope of the dispute to be resolved by the Accounting Firm shall be limited to a choice of either the [Resolver proposal] or the

---

[6]     *Id.* Ex. A § 2.7(b).

[7]     *Id.* Ex. A § 2.7(b)(i).

[8]     *Id.* Ex. A § 2.7(b)(ii).

[9]     *Id.*

[10]    *Id.*

[Agiliance proposal], and the Accounting Firm shall not make any other determination."[11] Thereafter, the "accounting firm shall . . . arbitrate the dispute and submit a written statement of its adjudication, which statement, when delivered to [Agiliance] and [Resolver]."[12] "The determination of the Accounting Firm shall constitute an arbitral award that is final, binding and unappealable and upon which a judgment may be entered by any court having jurisdiction thereof."[13]

On January 9, 2018, Agiliance objected to Resolver's statement of Net Working Capital.[14] On January 24, 2018, Resolver provided an updated statement of Net Working Capital.[15] On February 21, 2018, Agiliance attempted to initiate arbitration.[16] On February 28, 2018, Resolver refused to participate in the arbitration process, arguing that Agiliance's original objection was not sufficiently specific.[17]

---

[11]     *Id.*

[12]     *Id.*

[13]     *Id.*

[14]     Compl. 3.

[15]     *Id.*

[16]     *Id.* at 4.

[17]     *Id.*

On May 31, 2018, Agiliance filed its complaint in this case.[18]  On June 6, 2018, Agiliance filed its Motion for Summary Judgment,[19] which is now before me.

## II.   ANALYSIS

Agiliance moves for summary judgment.  Summary judgment will be "granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[20] The movant bears the initial burden of demonstrating that there is no question of material fact.[21]  When the movant carries that burden, the burden shifts to the nonmoving party "to present some specific, admissible evidence that there is a genuine issue of fact for a trial."[22]  When considering a motion for summary judgment, the evidence and the inferences drawn from the evidence are to be viewed

---

[18]     *Id.* at 1.

[19]     Pl.'s Mot. for Summ. J. 1.

[20]     *Twin Bridges Ltd. P'ship v. Draper*, 2007 WL 2744609, at *8 (Del. Ch. Sept. 14, 2007) (citing Ct. Ch. R. 56(c)).

[21]     *Deloitte LLP v. Flanagan*, 2009 WL 5200657, at *3 (Del. Ch. Dec. 29, 2009).

[22]     *Id.*

in the light most favorable to the non-moving party.[23]  Even so, the non-moving party may not rely on allegations or denials in the pleadings to create a material factual dispute.[24]  The pending motion for summary judgment turns on two questions:  (1) whether the parties agreed to arbitrate or obtain an expert determination regarding disputes over the Net Working Capital; and (2) if they agreed to arbitrate, whether the issues Resolver raises are procedural or substantive in nature.

## A.     The Parties Agreed to an Arbitration, not an Expert Determination

The parties disagree about the nature of the dispute resolution clause in the Agreement.  Agiliance argues that the parties agreed to arbitration; Resolver argues that the parties agreed to expert determination.  "Determining what type of dispute resolution mechanism the parties have agreed to presents a question of contract interpretation."[25]  The question of arbitration or expert determination depends on the intent of the parties.

---

[23]     Ct. Ch. R. 56(e); *Judah v. Del. Trust Co.*, 378 A.2d 624, 632 (Del. 1977); *Fike v. Ruger*, 754 A.2d 254, 260 (Del. Ch. 1999), *aff'd*, 752 A.2d 112 (Del. 2000).

[24]     *Fike*, 754 A.2d at 260.

[25]     *Penton Bus. Media Hldgs., LLC v. Informa PLC*, 2018 WL 3343495, at *12 (Del. Ch. July 9, 2018).

> Because Delaware adheres to the objective theory of contract interpretation, the court looks to the most objective indicia of that intent: the words found in the written instrument. As part of this initial review, the court ascribes to the words their common or ordinary meaning, and interprets them as would an objectively reasonable third-party observer.[26]

"[W]here a word has attained the status of a term of art and is used in a technical context, the technical meaning is preferred over the common or ordinary meaning."[27] "When established legal terminology is used in a legal instrument, a court will presume that the parties intended to use the established legal meaning of the terms."[28] "If a writing is plain and clear on its face, *i.e.*, its language conveys an unmistakable meaning, the writing itself is the sole source for gaining an understanding of intent."[29] "[W]hen we may reasonably ascribe multiple and different interpretations of a contract, we will find that the contract is ambiguous."[30]

---

[26] *Sassano v. CIBC World Mkts. Corp.*, 948 A.2d 453, 462 (Del. Ch. 2008) (footnotes omitted).

[27] *Viking Pump, Inc. v. Liberty Mut. Ins. Co.*, 2007 WL 1207107, at *13 (Del. Ch. Apr. 2, 2007).

[28] *Penton*, 2018 WL 3343495, at *12 (citations omitted).

[29] *Id.* (quoting *City Investing Co. Liquid. Tr. v. Cont'l Cas. Co.*, 624 A.2d 1191, 1198 (Del. 1993)).

[30] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1160 (Del. 2010).

Despite that, "[t]he parties' steadfast disagreement will not, alone, render [a] contract ambiguous."[31]

This Court has recently addressed the question of whether a provision contemplates arbitration or expert determination in *Penton Business Media Holdings, LLC v. Informa PLC*.[32] Both parties rely heavily on this case and argue that it sets the standard by which I should examine the language at issue here.

In *Penton*, two companies bought a third company.[33] The agreement and plan of merger contained "a dispute resolution mechanism that called for the parties to submit disputes to an independent accounting firm" and stated that "the accountant 'shall be acting as an accounting expert only and not as an arbitrator.'"[34] In determining whether the parties had agreed to an expert determination or an arbitration, Vice Chancellor Laster looked to the parties' intent and wrote that "[w]hen established legal terminology is used in a legal instrument, a court will

---

[31] *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992) ("A contract is not rendered ambiguous simply because the parties do not agree upon its proper construction.").

[32] 2018 WL 3343495 (Del. Ch. July 9, 2018).

[33] *Id.* at *1.

[34] *Id.*

presume that the parties intended to use the established legal meaning of the terms."[35]  Examining the language of the agreement before him, the Vice Chancellor held that "[t]his language explicitly calls for the role of 'expert' while disclaiming the role of 'arbitrator.'"[36]  The Vice Chancellor noted that "[t]he *Chicago Bridge* decision cited a report prepared by the Committee on International Commercial Disputes of the New York City Bar Association which sought to 'propose a coherent test to distinguish expert determination and arbitration . . . .'"[37]  "[T]he committee recommended that parties who wished to obtain an expert determination from an accountant, rather than inviting an arbitration, should 'state that the accounting firm is to act as an expert and not as an arbitrator.'""[38]

The contract language here is unambiguous.  The language of the Agreement manifests an intent to require the parties to arbitrate their disputes.  In Section 2.7(b)(ii) the parties agreed that any "disagreement shall be submitted for arbitration

---

[35]     *Id.* at *12 (citations omitted).

[36]     *Id.* at *13.

[37]     *Id.* (construing *Chicago Bridge & Iron Co. N.V. v. Westinghouse Elec. Co. LLC*, 166 A.3d 912 (Del. 2017)).

[38]     *Id.* (quoting N.Y.C. Bar Comm'n on Int'l Commercial Arbitration, *Purchase Price Adjustment Clauses and Expert Determinations:  Legal Issues, Practical Problems and Suggested Improvements* (2013)).

by a nationally-recognized accounting firm that agrees to use its best efforts to complete such arbitration."[39] They also agreed that the independent accounting firm will "arbitrate the dispute and submit a written statement of its adjudication, which statement, when delivered to [Agiliance] and [Resolver], shall become final and binding upon [Agiliance] and [Resolver],"[40] and that the "determination of the Accounting Firm shall constitute an arbitral award."[41] In one paragraph, the parties used the word "arbitration" twice, "arbitrate" once, and "arbitral" once. The parties never use the word "expert" or state that the Accounting Firm should "act as an expert and not as an arbitrator." The language could hardly be clearer in intending arbitration. Unlike in *Penton*, where the agreement instructed that the accountant "shall be acting as an accounting expert only and not as an arbitrator," here no evidence of intent in favor of expert determination exists. The clear intention of the parties as expressed in the Agreement requires binding arbitration.

Resolver makes several arguments that it believes shows the parties' intent to have the Accounting Firm act as an expert. First, Resolver argues that the parties'

---

[39]     Fantuzzi Aff. Ex. A § 2.7(b)(ii).

[40]     *Id.*

[41]     *Id.*

decision to limit the remit of the Accounting Firm to deciding between two submissions (a procedure commonly known as "baseball arbitration") is evidence that the parties intended an expert determination.[42]  Second, Resolver argues that Section 2.7(ii)'s admonition that "the Accounting Firm shall not make any other determination" shows that the Accounting Firm should not consider issues like notice, which Resolver wants to raise.[43]  Third, Resolver argues that Section 2.7's failure to specify arbitration rules indicates an intent that the Accounting Firm be an expert.[44]  Fourth and finally, Resolver argues that the Accounting Firm's lack of legal experience or training shows it is not suited to act as an arbitrator.[45]

Resolver points to no support in the law for the notion that baseball arbitration is not arbitration because it addresses narrow issues and requires the independent arbitrator to accept one party's submission entirely.  There is a long history of companies using baseball arbitration in an attempt to incentivize reasonable

---

[42]     Def.'s Opp'n Br. 8.

[43]     *Id.* at 9.

[44]     *Id.* at 10.

[45]     *Id.*

submissions.[46]  Narrow or broad, the enforceability of an arbitration clause depends on the intent of the parties as expressed in the language of the contract, and here the language is clear.  Resolver's argument that "the parties did not even authorize the Accounting Firm to do its own math" and, therefore, could not have agreed to binding arbitration[47] misses the point.  The parties chose baseball arbitration, which is binding arbitration under Delaware law.  Nor does the fact that the arbitrators are not legally trained,[48] or the parties' decision not to predetermine the rules governing the arbitration, change or invalidate the intent of the parties to arbitrate.  Resolver cites no cases, and I know of none, in support of either of these propositions.  Thus, the unambiguous contractual terms require the Accounting Firm to arbitrate.

---

[46]  *See, e.g.*, *Cede & Co. v. Technicolor*, 1990 WL 161084, *8 n.17 (Del. Ch. Oct. 19, 1990) ("[I]f it is understood that the court [or arbitrator] will or is likely to accept the whole of one [witness's] testimony or the other, incentives will be modified. While the incentives of the real world applications of the [model] will not be replicated, at least the parties will have incentives to make their [estimate] appear most reasonable.  This would tend to narrow the range of estimates, which would unquestionably be a benefit to the process.").

[47]  Def.'s Opp'n Br. 9.

[48]  *See, e.g.*, *Viacom Int'l Inc. v. Winshall*, 72 A.3d 78 (Del. 2013), and *HBMA Hldgs., LLC v. LSF9 Stardust Hldgs. LLC*, 2017 WL 6209594 (Del. Ch. Dec. 8, 2018) (enforcing an arbitration agreement to be carried out by an accounting firm with no legal expertise).

### B.  Resolver's Objections are Questions of Procedural Arbitrability

Having determined that the parties agreed to arbitrate, I must now resolve their dispute about whether the issues Resolver raises regarding notice are questions of procedural arbitrability (as Agiliance argues) or substantive arbitrability (as Resolver contends).

The Delaware Supreme Court has defined the categories of procedural and substantive arbitrability and explained what falls into each.  In *Viacom International, Inc. v. Winshall*,[49] the Court defined substantive arbitrability as "gateway questions relating to the scope of an arbitration provision and its application to a given dispute, and are presumptively decided by the court"[50] because "the court presumes that parties intended courts to decide issues of substantive arbitrability."[51]  In contrast, "[p]rocedural arbitrability issues concern whether the parties have complied with the terms of an arbitration provision, and are presumptively handled by arbitrators. These issues include whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been

---

[49]     72 A.3d 78 (Del. 2013).

[50]     *Viacom*, 72 A.3d at 82 (quoting *Viacom Int'l, Inc. v. Winshall*, 2012 WL 3249620, at *12 (Del. Ch. Aug. 9, 2012)).

[51]     *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 79 (Del. 2006).

met . . ."[52]  "[P]rocedural arbitrability also includes . . . what evidence the arbitrator should consider in deciding the dispute."[53]

Resolver argues that "this case presents a mere 'gateway' question as to whether the parties' impasse is an arbitrable dispute."[54]  In particular, Resolver argues that "Agiliance materially breached the contract and failed to satisfy a condition precedent to the invocation of the arbitration clause; namely, it failed to deliver 'specific written notice' that stated 'in reasonable detail the basis of [its] objections and [its] proposed adjustments' based upon a 'valid objection.'"[55]

Resolver raises classic questions of procedural arbitrability.  Resolver objects to arbitration precisely based on conditions precedent and notice, and *Viacom* is squarely on point.  Resolver's attempt to distinguish *Viacom* because "the parties therein conceded that the FAA governed the dispute"[56] is unconvincing.  Resolver cites no authority, and I know of none, for the proposition that a failure to include

---

[52]     *Viacom*, 72 A.3d at 82 (quoting *Viacom*, 2012 WL 3249620, at *12).

[53]     *TIMP Participants LLC v. DSW Gp. Hldgs. LLC*, 2016 WL 490257, at *9 (Del. Ch. Feb. 4, 2016) (citing *Viacom*, 72 A.3d at 83-34).

[54]     Def.'s Opp'n Br. 12 (citations omitted).

[55]     *Id.* at 4.

[56]     *Id.* at 12.

arbitration rules in an arbitration clause invalidates the arbitration clause or changes the distinction between procedural and substantive arbitrability.

## III.    CONCLUSION

For the foregoing reasons, Agiliance's Motion for Summary Judgment is GRANTED.

**IT IS SO ORDERED**.

Sincerely,

*/s/ Tamika Montgomery-Reeves*

Vice Chancellor

TMR/jp