# COURT OF CHANCERY
## OF THE
## STATE OF DELAWARE

BONNIE W. DAVID
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DE 19947

Date Submitted: January 13, 2026
Date Decided: January 21, 2026

Philip Trainer, Jr., Esq.
Samuel M. Gross, Esq.
Ashby & Geddes LLP
500 Delaware Ave., PO Box 1150
Wilmington, DE 19899

Ryan D. Stottmann, Esq.
Cassandra L. Baddorf, Esq.
Morris, Nichols, Arsht & Tunnell, LLP
1201 N. Market St., PO Box 1347
Wilmington, DE 19899

RE: *Shareholder Representative Services LLC v. SomaLogic, Inc.*,
C.A. No. 2025-0761-BWD

Dear Counsel:

This letter opinion resolves defendant SomaLogic, Inc.'s motion to dismiss or stay this litigation due to an arbitration provision in a merger agreement.

In July 2022, SomaLogic, Inc. and Palamedrix, Inc. entered into a merger agreement under which SomaLogic, Inc. acquired Palamedrix, Inc. for $35 million at closing plus up to $17.5 million if the acquired entity achieved certain performance milestones. The plaintiff, Shareholder Representative Services LLC, represents the interests of former Palamedrix, Inc. securityholders. It alleges that after closing, SomaLogic, Inc. breached its contractual obligations under the merger agreement by failing to use "Commercially Reasonable Efforts" to achieve the milestones. Through the present motion, the parties debate whether, under the

precise language of the merger agreement, that claim is subject to arbitration.  For

the reasons explained below, I conclude that it is not and therefore deny the motion

to dismiss or stay.

## I.    BACKGROUND[1]

### A.    Defendant Acquires Palamedrix Pursuant To A Merger Agreement.

SomaLogic, Inc. ("SomaLogic" or "Defendant"), a Delaware corporation

headquartered in Boulder, Colorado, is a proteomics company that develops tests to

identify the presence of particular proteins for medical diagnosis.  Compl. ¶¶ 12, 17–

18.  Palamedrix, Inc. ("Palamedrix") was another proteomics company developing

DNA nanosensor technology to identify proteins present in biological samples.  *Id.*

¶¶ 16, 21.

On July 25, 2022, Defendant and Palamedrix entered into a merger agreement

(the "Merger Agreement") under which Defendant acquired Palamedrix (the

---

[1] The following facts are taken from Plaintiff's Verified Complaint (the "Complaint"), the exhibits attached thereto, and other documents submitted in connection with the Motion to Dismiss or Stay.  Verified Compl. [hereinafter Compl.], Dkt. 1.  In deciding a motion under Court of Chancery Rule 12(b)(1), the Court may consider documents outside the pleadings. *See Sloan v. Segal*, 2008 WL 81513, at *6 (Del. Ch. Jan. 3, 2008) ("This court has the discretion to consider evidence outside the pleadings in deciding motions under Rule 12(b)(1) . . . .").

"Merger"). *Id.* ¶ 22; *id.*, Ex. A [hereinafter Merger Agt.] at 1.[2] In consideration for the Merger, Defendant agreed to pay Palamedrix securityholders $35 million at closing and up to an additional $17.5 million (the "Milestone Consideration") in three tranches if the acquired entity achieved certain performance milestones (the "Milestones")[3] after closing. Compl. ¶ 22; Merger Agt. § 2.16(a)(iv), (d).

Section 2.16 of the Merger Agreement governs Plaintiff's entitlement to Milestone Consideration. *See generally*, Merger Agt. § 2.16. Section 2.16(b)(i) requires Defendant to use "Commercially Reasonable Efforts"[4] to provide technical and scientific support and funding to achieve the Milestones:

---

[2] Under Section 2.17(a) of the Merger Agreement, the Palamedrix securityholders appointed plaintiff Shareholder Representative Services LLC ("Plaintiff") as their "representative, agent, proxy and attorney-in-fact . . . to act on behalf [of] [Palamedrix] Securityholder[s] as of the Closing for all purposes in connection with this [Merger Agreement]." Merger Agt. § 2.17(a); Compl. ¶ 11.

[3] The Milestones are tied to sales of products based on Palamedrix technology. *See* Merger Agt. § 2.16(d) (showing the consideration that may be earned based on levels of "cumulative Net Sales"); *id.* § 1.1 ("'Net Sales' means . . . the 'net sales' generated from the sale of Soma San Diego Products . . . ."); *id.* (defining "Soma San Diego Product" to include "any product that embodies or incorporates any Intellectual Property created, owned by, or licensed to [Palamedrix] as of the time of Closing").

[4] The Merger Agreement defines "Commercially Reasonable Efforts" to mean:

> solely for purposes of Section 2.16, that level of effort and resources that the [Defendant] would typically devote to, and with respect to, products of similar market potential at a similar stage in development or product life, taking into account Intellectual Property protection or potential infringement, safety, the competitiveness of alternative products, and the profitability of

> [Defendant] shall use, and shall cause its Affiliates (including the Surviving Company) to use, Commercially Reasonable Efforts to (A) provide technical and scientific support to achieve each of the Milestones and (B) provide funding that is reasonably necessary to support achievement of the Milestones, with respect to each such applicable Milestone. Without limiting the generality of the foregoing, [Defendant] shall not, and shall not authorize or permit any of its Affiliates (including the Surviving Company) to, take any action, or omit to take any action, in bad faith with the intent of avoiding or materially delaying the achievement of any Milestone.

*Id.* § 2.16(b)(i). Section 2.16(c) sets out "Milestone Consideration Procedures."

*Id.* § 2.16(c). Section 2.16(c)(ii) states:

> If [Plaintiff] believes in good faith that a Milestone has been achieved, then [Plaintiff] shall submit a written notice (a "Milestone Achievement Claim") to [Defendant] (A) informing [Defendant] of such belief and (B) setting forth evidence for its belief that such Milestone has been achieved. Within forty-five (45) calendar days following [Defendant's] receipt of a Milestone Achievement Claim, [Defendant] shall either (A) pay and/or issue (or cause to be paid and/or issued) the applicable Milestone Consideration to the Milestone Consideration Recipients in accordance with Section 2.16(c)(v) and the cash payment to JPM in accordance with Section 2.16(a)(iii) or (B) notify [Plaintiff] in writing that it disagrees and disputes such Milestone Achievement Claim (such dispute, a "Milestone Dispute," and such notice, a "Milestone Dispute Notice").

*Id.* § 2.16(c)(ii). If Defendant delivers a Milestone Dispute Notice, the parties must

"first discuss and attempt to resolve the Milestone Dispute through negotiations."

---

the product, all as measured by the facts and circumstances in existence at the time such efforts are due.

Merger Agt. § 1.1.

*Id.* § 2.16(c)(iii)(A). If the parties do not reach agreement, they may submit the Milestone Dispute to final and binding arbitration:

> If a Milestone Dispute has not been resolved through negotiation within sixty (60) days after the date of [Plaintiff]'s receipt of a Milestone Dispute Notice, a Milestone Dispute Party may submit the Milestone Dispute to final and binding arbitration in the State of California. The arbitration shall be administered by the Judicial Arbitration and Mediation Services, Inc. ("JAMS") pursuant to its Streamlined Arbitration Rules & Procedures effective June 1, 2021 (the "JAMS Rules") and the modified rules and procedures provided below, or by an alternative as agreed upon by the Milestone Dispute Parties. The arbitration shall be held before one (1) mutually agreed neutral arbitrator; provided, that if the parties do not agree within fifteen (15) days of the end of the sixty (60)-day negotiation period, an arbitrator will be appointed in accordance with JAMS Rule 15.

*Id.* § 2.16(c)(iii)(B).

Separately, Section 10.10 of the Merger Agreement provides that "[e]ach of the parties irrevocably agrees that any legal Action or proceeding arising out of or relating to this Agreement brought by any party or its successors or assigns against any other party shall be brought and determined in the Court of Chancery of the State of Delaware," or if the Court of Chancery lacks jurisdiction, "then any such legal Action or proceeding may be brought in any federal court located in the State of Delaware or any other Delaware state court." *Id.* § 10.10. Section 10.10 further states:

> Notwithstanding the foregoing, the parties agree that (i) disputes with respect to the matters referenced in Section 2.13[5] shall be resolved by the Independent Accounting Firm as provided therein and (ii) disputes with respect to the matters referenced in Section 2.16 shall be resolved by the JAMS arbitrator as provided therein.

*Id.*

**B.    Plaintiff Claims Entitlement To Milestone Consideration While Arguing That Defendant Failed To Use Commercially Reasonable Efforts To Achieve The Milestones.**

On January 5, 2024, Defendant combined with nonparty Standard BioTools Inc. ("Standard") in a merger (the "SomaLogic-Standard Merger"). Compl. ¶¶ 5, 52.

On March 20, Plaintiff sent a letter to Defendant and Standard with the subject line "Milestone Achievement Claim" (the "Milestone Letter"), asserting that the SomaLogic-Standard Merger had triggered change of control provisions under the Merger Agreement. *Id.* ¶ 60; Def. SomaLogic, Inc.'s Opening Br. in Supp. of Its Mot. to Compel Arbitration and Dismiss or, in the Alternative, Stay Pl.'s Verified Compl. [hereinafter DOB], Ex. A [hereinafter Milestone Ltr.] at 1, Dkt. 9; Merger

---

[5] Section 2.13 concerns post-closing adjustments. *See generally id.* § 2.13; *see also id.* § 2.13(c) ("If [Plaintiff] and [Defendant] have not resolved all such differences by the end of such 15-day period, [Plaintiff] and [Defendant] shall submit, in writing, to an independent public accounting firm . . . their briefs detailing their views as to the correct nature and amount of each item remaining in dispute and the amounts of the Closing Net Working Capital, Closing Indebtedness, Closing Cash and Closing Transaction Expenses, and the Independent Accounting Firm shall make a written determination as to each such disputed item . . . , which determination shall be final and binding on the parties for all purposes hereunder.").

Agt. § 2.16(i)(i). The Milestone Letter argued that due to a change of control, "all Milestones that ha[d] not then been achieved [were] deemed achieved and all Milestone Consideration associated therewith [must] be fully accelerated."[6] Milestone Ltr. at 1–2; Merger Agt. § 2.16(i)(i).

The Milestone Letter also alleged that Defendant had breached Section 2.16(b)(i) of the Merger Agreement by failing to use Commercially Reasonable Efforts to achieve the Milestones. Milestone Ltr. at 3–4. The Milestone Letter asserted that after the Merger closing, fourteen Palamedrix employees were offered jobs with Defendant, but seven employees terminated their employment shortly thereafter and Defendant failed to replace them for months. *Id.* at 4. The Milestone Letter further asserted that for the first six weeks after closing, Defendant discouraged Palamedrix employees from purchasing materials necessary for their research and made the purchasing process "extremely difficult." *Id.* The Milestone Letter also alleged that Defendant disincentivized Palamedrix's founders from

---

[6] "[Plaintiff] has since withdrawn that [change of control] theory." Pl.'s Answering Br. in Opp'n to SomaLogic, Inc.'s Mot. to Compel Arbitration and Dismiss or, in the Alternative, Stay Pl.'s Verified Compl. [hereinafter PAB] at 25, Dkt. 12; *see also* Def. SomaLogic, Inc.'s Reply Br. in Supp. of Its Mot. to Compel Arbitration and Dismiss or, in the Alternative, Stay Pl.'s Verified Compl. [hereinafter DRB] at 14, Dkt. 14 ("[I]t is true that [Plaintiff] almost immediately abandoned that [change of control] argument (due to its weakness)[.]").

focusing their time and energy on the Milestones by failing to restrict the founders' stock consideration in violation of certain side letters. *Id.* at 4–5.

On April 4, Defendant responded to the Milestone Letter with a "Milestone Abandonment Notice," asserting that Defendant had satisfied its obligation to use Commercially Reasonable Efforts but "s[aw] no path to leveraging the Intellectual Property that was created, owned by, or licensed to Palamedrix as of the [Merger] Closing Date in a commercially reasonable manner to produce a Soma San Diego Product capable of meeting the [Milestones]." DOB, Ex. B at 1–3; Compl. ¶ 61. The same day, Defendant delivered a "Milestone Dispute Notice" arguing that the SomaLogic-Standard Merger did not result in a change of control accelerating the Milestones and reiterating the position that Defendant had satisfied its Commercially Reasonable Efforts obligation. Exhibit to Ltr. at 1–4, Dkt. 21.

On May 8, Plaintiff responded to the Milestone Abandonment Notice with an "Information Demand." DRB, Ex. E at 1. Thereafter, the parties entered into a "Negotiating Extension Agreement" extending deadlines "contemplated by Section 2.16(c)(iii)(A)" while the parties were "engaged in discussions in an attempt to resolve the disputes between them as reflected in correspondence between them beginning with [Plaintiff]'s letter to [Defendant] dated March 20, 2024." DOB, Ex. C; Compl. ¶ 62; *see* Merger Agt. § 2.16(c)(iii)(A).

On June 22, 2025, Standard and nonparty Illumina, Inc. ("Illumina") entered into a stock purchase agreement through which Illumina will acquire Defendant. Compl. ¶ 71.

### C.     Procedural History

On July 2, Plaintiff initiated this action through the filing of the Complaint. Dkt. 1.

Count I of the Complaint alleges that Defendant breached Section 2.16(b)(i) of the Merger Agreement by failing to use Commercially Reasonable Efforts to achieve the Milestones.  Compl. ¶¶ 72–76.  In addition to the arguments raised in the Milestone Letter concerning employee retention and research materials, the Complaint alleges (among other facts) that Defendant tasked the Palamedrix team to work on other projects that would not help to achieve the Milestones, and that Standard's cost-cutting strategies following the SomaLogic-Standard Merger were "fundamentally incompatible" with "[Defendant's] long-term commitment to develop and commercialize Palamedrix's technology over a five- to six-year period." *Id.* ¶ 57.

Count II of the Complaint seeks a declaratory judgment that Defendant's Milestone Abandonment Notice breached the Merger Agreement.  *Id.* ¶¶ 77–80. Count III of the Complaint alleges, in the alternative, that the Milestone

Abandonment Notice breached the implied covenant of good faith and fair dealing in the Merger Agreement. *Id.* ¶¶ 81–83.

On August 4, Defendant filed a Motion to Compel Arbitration and Dismiss or, in the Alternative, Stay Plaintiff's Verified Complaint (the "Motion to Dismiss or Stay"). Def. SomaLogic, Inc.'s Mot. to Compel Arbitration and Dismiss or, in the Alternative, Stay Pl.'s Verified Compl., Dkt. 6. The Court heard oral argument on the Motion to Dismiss or Stay on January 13, 2026. Dkt. 24.

## II. ANALYSIS

Defendant has moved to dismiss the Complaint under Court of Chancery Rule 12(b)(1) for lack of subject matter jurisdiction on the basis that the Merger Agreement requires the parties to arbitrate this dispute.

"It is well settled that 'Delaware courts lack subject matter jurisdiction to resolve disputes that litigants have contractually agreed to arbitrate.'" *Innovation Inst., LLC v. St. Joseph Health Source, Inc.*, 2019 WL 4060351, at *4 (Del. Ch. Aug. 28, 2019, revised Aug. 29, 2019) (quoting *NAMA Hldgs., LLC v. Related World Mkt. Ctr., LLC*, 922 A.2d 417, 429 (Del. Ch. 2007)). "A strong presumption exists in favor of arbitration, and, accordingly, contractual arbitration clauses are generally interpreted broadly by the courts." *NAMA Hldgs., LLC*, 922 A.2d at 430 (first citing *Majkowski v. Am. Imaging Mgmt. Servs., LLC*, 913 A.2d 572, 581–82 (Del. Ch.

2006); and then citing *Westendorf v. Gateway 2000, Inc.*, 2000 WL 307369, at *3 (Del. Ch. Mar. 16, 2000)). But "this presumption will not trump basic principles of contract interpretation[.]"[7] *Id.* (citing *Parfi Hldg. AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 156 (Del. 2002)). To determine substantive arbitrability,[8] the Court must look to the language of the arbitration clause to determine whether it is "broad or narrow in scope." *Parfi Hldg. AB*, 817 A.2d at 155. Then "the court must apply the relevant scope of the provision to the asserted legal claim to determine whether the claim falls within the scope of the contractual provisions that require arbitration." *Id.*

Defendant argues that Sections 10.10 and 2.16 of the Merger Agreement require arbitration of this dispute. As set forth above, Section 10.10 requires as a

---

[7] The parties dispute who bears the burden to demonstrate that arbitration is required. Plaintiff argues that the burden is on Defendant, as the party seeking to compel arbitration. PAB at 16. Defendant argues that Plaintiff bears the burden of establishing subject matter jurisdiction and, further, that uncertainty regarding arbitrability should be resolved in favor of arbitration. DOB at 9–11. Because the arbitration provision is unambiguous, the result is the same regardless of who bears the burden.

[8] The parties agree that the Court, and not an arbitrator, must determine arbitrability. *See* DOB at 15 ("[Defendant] respectfully requests that the Court enter an order compelling arbitration . . . ."); *see also HBMA Hldgs., LLC v. LSF9 Stardust Hldgs. LLC*, 2017 WL 6209594, at *4 (Del. Ch. Dec. 8, 2017) ("[Q]uestions of substantive arbitrability require judicial resolution unless the parties' contract clearly and unmistakably provides otherwise." (quoting *Willie Gary LLC v. James & Jackson LLC*, 2006 WL 75309, at *1 (Del. Ch. Jan. 10, 2006))).

general matter that "any legal Action or proceeding arising out of or relating to this Agreement" be "brought and determined in the Court of Chancery of the State of Delaware" unless the Court of Chancery lacks jurisdiction, in which case "any such legal Action or proceeding may be brought in any federal court located in the State of Delaware or any other Delaware state court." Merger Agt. § 10.10. Section 10.10 then identifies two narrow exceptions in which a dispute must be resolved through alternative procedures:

> Notwithstanding the foregoing, the parties agree that (i) disputes with respect to the matters referenced in Section 2.13 shall be resolved by the Independent Accounting Firm as provided therein and (ii) disputes with respect to the matters referenced in Section 2.16 shall be resolved by the JAMS arbitrator as provided therein.

*Id.*

The parties debate whether the present dispute falls within the arbitration carveout in Section 10.10(ii), which states that "disputes with respect to the matters referenced in Section 2.16 shall be resolved by the JAMS arbitrator *as provided therein*." *Id.* (emphasis added). Section 2.16, in turn, "provide[s]" for a JAMS arbitration with "modified rules and procedures" in the event of a "Milestone Dispute," defined to mean a disagreement with a "Milestone Achievement Claim." *Id.* § 2.16(c)(ii), (c)(iii)(B). Plaintiff therefore argues that Section 10.10(ii) requires arbitration of a Milestone Dispute only. PAB at 21. Defendant, on the other hand,

argues that Section 10.10 requires arbitration for "all matters referenced in Section 2.16." DRB at 8–9; *see also id.* at 7 (arguing the parties are required "to arbitrate **_all_** Milestone-related disputes"). Defendant says the parties could have drafted Section 10.10(ii) to require arbitration under Section 2.16(c)(iii)(B), but instead drafted Section 10.10(ii) to reference Section 2.16 more generally. *Id.* at 9. According to Defendant, because the Complaint "centers on the application of Section 2.16," the claims therein are subject to arbitration. DOB at 9.

Plaintiff, in my view, offers the only reasonable reading of Sections 2.16 and 10.10(ii) together. Defendant's interpretation overlooks that Section 10.10(ii) requires arbitration of disputes "as provided" in Section 2.16, and Section 2.16 "provide[s]" for arbitration of a Milestone Dispute only. Defendant's attempt to read a broader scope into Section 10.10(ii) fails to give meaning to all language of the contract.[9] Defendant's reading also fails to reconcile the narrow language in Section 2.16(c)(iii)(B) with a broad interpretation of Section 10.10(ii). It would make little sense for the parties to narrowly circumscribe arbitration under Section

---

[9] Delaware courts read the "contract as a whole and we will give each provision and term effect, so as not to render any part of the contract mere surplusage." *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) (quoting *Kuhn Constr., Inc. v. Diamond State Port Corp.*, 990 A.2d 393, 396–97 (Del. 2010)).

2.16(c)(iii)(B) to a Milestone Dispute, only to then broadly sweep in arbitration of "***all*** Milestone-related disputes" through Section 10.10(ii), as Defendant contends.[10]

Defendant also argues that even accepting Plaintiff's narrower reading of Section 10.10(ii), the present dispute falls within the scope of that provision. Defendant contends that even if the arbitration provision in Section 10.10(ii) is limited to Milestone Disputes, the Complaint repackages Plaintiff's Milestone Letter which forms the basis of a Milestone Dispute. The problem with this argument is that Plaintiff has withdrawn any Milestone Achievement Claim and instead *agrees* that the Milestones were not achieved.[11] *See* PAB at 1 ("There is no dispute that the Milestones were *not* achieved and that [Defendant] abandoned [its] pursuit before the specified completion dates."); *id.* at 4 ("[Plaintiff] has since withdrawn that theory; it alleges the Milestones were not achieved."); *id.* at 25 ("[Plaintiff] does not contend . . . that any Milestone has been achieved."). As a result, there is no Milestone Dispute (*i.e.*, no disagreement with a Milestone Achievement Claim) to

---

[10] DRB at 7. "Specific language in a contract controls over general language, and where specific and general provisions conflict, the specific provision ordinarily qualifies the meaning of the general one." *DCV Hldgs., Inc. v. ConAgra, Inc.*, 889 A.2d 954, 961 (Del. 2005).

[11] Although Defendant argues that the parties' course of conduct in negotiating the Milestone Letter (including their entry into a Negotiating Extension Agreement) supports its contractual interpretation, it does not argue that some other legal theory (such as waiver, acquiescence, or estoppel) precludes Plaintiff from changing litigation strategy.

arbitrate.[12]  Instead, through its Complaint, Plaintiff now alleges that Defendant breached its obligation under Section 2.16(b)(i) to use Commercially Reasonable Efforts to achieve the Milestones and seeks damages for that alleged breach.  This is not a Milestone Dispute subject to arbitration.

Because the claims in the Complaint are not subject to arbitration under the plain language of the Merger Agreement, the Motion to Dismiss or Stay must be denied.

## III.  CONCLUSION

For the reasons explained above, the Motion to Dismiss or Stay is DENIED.

Sincerely,

*/s/ Bonnie W. David*

Bonnie W. David
Vice Chancellor

cc:  All counsel of record (by File & ServeXpress)

---

[12] Notably, in *Viacom International, Inc. v. Winshall*, the Delaware Supreme Court held that "[i]f the subject matter to be arbitrated is the *calculation* of an [earnout], . . . all issues as to what financial or other information should be considered in *performing the calculation* are decided by the arbitrator."  72 A.3d 78, 83 (Del. 2013) (emphasis added). Here, Plaintiff does not dispute the calculation of an earnout (including, for example, the calculation of product sales based on Palamedrix technology), instead alleging that Milestones were not achieved due to Defendant's alleged breach of contract.