**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| PAUL J. MILLER and<br>FRANCIS A. REMICK, | ) | |
| | ) | |
| | ) | |
| Plaintiffs/Counterclaim<br>Defendants, | ) | |
| | ) | |
| | ) | |
| v. | ) | C.A. No. 2024-1049-LM |
| | ) | |
| WILLIAM JOSHUA MELLOR and<br>MILLER-REMICK, LLC, | ) | |
| | ) | |
| | ) | |
| Defendants/Counterclaim<br>Plaintiffs. | ) | |

Final Report: September 26, 2025
Date Submitted: July 11, 2025

## FINAL REPORT

Andrea S. Books, WILKS LAW, LLC, Wilmington, DE; *Attorney for Plaintiffs/Counterclaim Defendants.*

Richard I.G. Jones, Jr., Periann Doko, Charmi Patel, BERGER MCDERMOTT LLP; Wilmington, DE; *Attorneys for Defendants/Counterclaim Plaintiffs.*

**MITCHELL, M.**

This final report resolves the parties' cross motions for judgment on the pleadings. The plaintiffs request that this Court vacate the arbitration award and find the defendants to be liable for breach of contract. The defendants ask that the Court confirms the arbitration award and dismiss the plaintiffs' additional breach of contract claims. I find that the arbitration award should be confirmed and that the defendants are liable for breach of contract. I explain further below.

## I.    FACTUAL BACKGROUND[1]

By way of background, Plaintiff, Paul J. Miller, and Plaintiff, Francis A. Remick, (collectively, "Plaintiffs" or "Sellers") were co-founders and principals of Defendant Miller-Remick LLC (hereinafter, the "Company").[2] Defendant, William J. Mellor (hereinafter, "Purchaser") is a resident of Pennsylvania, and the Company is a New Jersey limited liability company (collectively, "Defendants").[3] The Company is a government engineering contractor that operates in the public and federal sectors, with an emphasis on servicing veterans and the Department of Veteran Affairs.[4] The Company earned revenue through project management,

---

[1] Citations to the Docket, and if needed, the exhibits attached thereto are cited in the form of "D.I. __, Ex. #".

[2] *See* D.I. 16 at ¶¶ 9–12.

[3] D.I. 17 at ¶¶5–6.

[4] D.I. 17 at ¶ 11.

engineering, plumbing design, construction management, and further specialty services.[5]

### A. The Securities Purchase Agreement and Amended Promissory Notes

Plaintiffs agreed to sell the Company to Defendant William J. Mellor, executing a Securities Purchase Agreement (hereinafter, the "SPA") on March 22, 2022.[6] Under the SPA, Plaintiffs Paul J. Miller and Francis A. Remick agreed to sell all their interests in the Company to Defendant William J. Mellor.[7]

Section 1.02 of the SPA specifically details the price for which the Purchaser would acquire the Company from the Sellers (hereinafter, the "Purchase Price").[8] The Purchase Price would be equal to the Closing Consideration plus any Earn-Out Payments.[9] Under this Section, the Closing Consideration is equal to $5,000,000 that is payable through:

---

[5] *Id.*

[6] D.I. 16 at ¶12; *see* D.I. 24, Ex. A.

[7] *See* D.I. 24, Ex. A ("WHEREAS, the Parties hereto desire to enter into this Agreement pursuant to which, upon the terms and subject to the conditions set forth in this Agreement, at the Closing, the Sellers shall sell to the Purchaser, and the Purchaser shall purchase from the Sellers, 100% of the Company Interests (the "Purchased Equity")[.]").

[8] *Id.* at § 1.02.

[9] *Id.* ("the Purchaser shall pay or cause to be paid to the Sellers an aggregate amount equal to the sum of (a) the Closing Consideration, plus (b) the Earn-Out Payments (when and as payable, if any.)").

(i) [$3,500,000.00] in cash; and (ii) an aggregate of [$1,500,000.00] in the form of Promissory Notes issued to the Sellers in accordance with their Sharing Percentages; plus an amount of cash equal to (a) the amount, if any, by which the Estimated Net Working Capital exceeds the Target Net Working Capital; minus (b) the amount, if any, by which the Estimated Net Working Capital is less than the Target Net Working Capital; plus (c) the amount of Estimated Cash, if any; minus (d) the amount of the Estimated Closing Indebtedness, if any; minus (e) the Holdback Amount; minus (g) the amount of the Estimated Transaction Expenses, if any.[10]

Section 1.03(a) of the SPA details the process by which the Company must deliver its estimated Closing statement to the Purchaser ahead of Closing (hereinafter, the "Estimated Closing Statement").[11] The Company was to deliver the Estimated Closing Statement no later than 2 business days before the Closing Date, and this Estimated Closing Statement was to include "a good faith calculation of the Company's estimate . . . of: (A) the aggregate amount of Cash . . . ; (B) Net Working Capital . . . ; (C) the aggregate amount of Closing Indebtedness . . . ; (D) the aggregate amount of Transaction Expenses . . . ; and (E) the Closing Consideration calculation based on the foregoing[.]"[12]

Section 1.04(c) of the SPA provides, that "[t]he Purchaser shall retain from the cash portion of the Closing Consideration to be paid to the Sellers at Closing

---

[10] *Id.*

[11] *See* D.I. 24, Ex. A at § 1.03(a).

[12] *Id.*

3

cash in an amount equal to the Holdback Amount, which amount shall be released in accordance with Section 1.06[d]."[13]

The Purchase Price was subject to post-closing adjustments under the SPA.[14] Section 1.06 generally provides for the post-closing adjustment procedure.[15] Section 1.06(a) of the SPA provides, that the Company was required to "prepare and deliver to the Sellers a [closing statement]" within 90 days after Closing (hereinafter, the "Closing Statement").[16] This Closing Statement was required to include the Company's calculation, in accordance with the rules set forth by the SPA, of: "(i) the aggregate amount of Cash, (ii) the Net Working Capital, (iii) the aggregate amount of Closing Indebtedness, (iv) the aggregate amount of Transaction Expenses, and (v) the Closing Consideration."[17]

Section 1.06(b) defines the "Post-Closing Adjustment" as "an amount equal to the Final Closing Consideration minus the Estimated Closing Consideration."[18] Section 1.06(c) provides obligations for when or if this calculation results in a

---

[13] D.I. 24, Ex. A at § 1.04(c).

[14] D.I. 24, Ex. A at §1.06.

[15] *Id.*

[16] D.I. 24, Ex. A at § 1.06(a).

[17] *Id.*

[18] D.I. 24, Ex. A at § 1.06(b).

negative number.[19] Meanwhile, Section 1.06(d) provides obligations for when or if this calculation results in a positive number.[20]

Section 1.06(f) of the SPA necessitates that any payments required to be made under Section 1.06 must be made "within five (5) Business Days after the date on which the Final Closing Consideration is finally determined."[21] Any objections (the "Objections Statement") to the Company's Closing Statement, are required to be delivered within 30 days after delivery of the Closing Statement.[22] The Objections Statement is limited in that it may only contain objections to mathematical errors and whether calculations are compliant with the SPA, as well as the Sellers' proposed resolution for each objection.[23]

Section 1.09 of the SPA concerns payments ("Earn-Out Payments") that the Purchaser agreed to pay to the Sellers as additional consideration for the purchased interests subject to and upon achievement of certain events.[24] Under, Section 1.09(a),

---

[19] *See* D.I. 24, Ex. A at § 1.06(c) ("If the Post-Closing Adjustment is a positive number, then the Purchaser shall: (i) release the entire Holdback Amount to the Sellers, pro rata in accordance with the Sharing Percentages; and (ii) pay, or cause to be paid, to the Sellers an aggregate amount equal to the amount by which the Final Closing Consideration is greater than the Estimated Closing Consideration.").

[20] *See* D.I. 24, Ex. A at § 1.06(d).

[21] D.I. 24, Ex. A at § 1.06(f).

[22] *See* D.I. 24, Ex. A at § 1.06(g).

[23] *Id.*

[24] *See* D.I. 1, Ex. A at § 1.09.

5

"after each year of the Revenue Performance Period, the Purchaser shall pay Sellers . . . an aggregate amount . . . calculated as follows[:]" (i) if the Company's Revenue for the year is less than or equal to $13,000,000, the Purchaser pays $0; (ii) if the Company's Revenue for the year is greater than $13,000,000, the Purchaser pays an amount equal to 5% of the amount by which the Company's Revenue exceeds $13,000,000 provided, however, that the maximum payment cannot exceed $2,000,000.[25] Section 1.09(d) provides for the Purchaser's Right of set-off, necessitating that "[t]o the extent any obligation of the Sellers (excluding Sellers' indemnification obligations pursuant to Article VII) has not been satisfied, the Purchaser shall have the right to withhold and set-off against any amount otherwise due to be paid to the Sellers pursuant to this Section 1.09."[26]

Section 2 of the SPA concerns the Promissory Notes that the Purchaser would pay to the Sellers as part of the Purchase Price.[27] Section 2.03(b) (hereinafter, the "Promissory Notes Provision") provides that, at the Closing, the Purchaser shall deliver to the Sellers "Promissory Notes, issued by the Purchaser to the Sellers in accordance with their respective Sharing Percentages, in the aggregate principal amount of [$1,500,000.]"[28] Under Section 2.04, the Purchaser must deliver to the

---

[25] D.I. 24, Ex. A at §§ 1.09(a)(i)–(ii).

[26] D.I. 24, Ex. A at § 1.09(d).

[27] *See* D.I. 24, Ex. A at §§ 2.03–2.04.

[28] D.I. 24, Ex. A at § 2.03(b).

Sellers "evidence that the Promissory Notes have a validly perfect, first priority lien in all of the Company's assets and in the Purchased Equity" within 15 business days following the Closing.[29]

Under Section 9.17 of the SPA (hereinafter, the "Choice of Law Provision"), all issues concerning the construction, validity, interpretation, and enforceability of the SPA are governed by and must be construed in accordance with Delaware law.[30]

## B.      The Dispute

The SPA fully closed on March 22, 2022 (hereinafter, the "Closing Date").[31] On the same day promissory notes were executed for each Plaintiff.[32] The promissory notes were amended on January 12, 2023 (the "Amended Promissory Notes").[33] The Company delivered a Closing Statement to the Sellers on August 2, 2023, which was past the 90-day deadline under the SPA.[34] A series of communications occurred thereafter in which Plaintiffs requested supporting documentation to the Closing Statement.[35] The parties were unable to resolve their

---

[29] D.I. 24, Ex. A at § 2.04.

[30] D.I. 24, Ex. A at § 9.17.

[31] *See* D.I. 24, Ex. A.

[32] *See* D.I. 24, Ex. D and Ex. E.

[33] D.I. 26 at 3; s*ee also,* D.I. 26, Ex. A.

[34] D.I. 24, Ex. C at 1; *see* D.I. 24, Ex. A at § 1.06(a).

[35] D.I. 17 at ¶ 20.

disputes over the Closing Statement.[36] The Plaintiffs delivered their Objections Statement on April 18, 2024, past the 30-day deadline in the SPA, and after the parties already decided to involve an arbitrator.[37]

The parties are not in dispute over the Plaintiffs' entitlement to the reported balance of the Amended Promissory Notes, or the Earn-Out Payments.[38] Defendants acknowledged the amount owed to Plaintiffs in two separate letters.[39] The Plaintiffs are owed $233,925.41, each, pursuant to their respective promissory notes.[40] The Parties do dispute which of them is entitled to the $125,000 Holdback payment, with the Defendants arguing that Plaintiffs are not entitled to the Holdback payment because of the negative post-closing adjustment.[41] To date, none of these payments have been made.

### C.    The Arbitration Clause and Proceedings

Section 1.06(h) of the SPA (hereinafter, the "Arbitration Provision") provides that, "[i]f an Objections Statement is timely delivered, the Sellers and the Company shall negotiate in good faith to resolve any objections set forth thereon[.]"[42]

---

[36] D.I. 17 at ¶21; D.I.24, Ex. H.

[37] D.I. 24, Ex. I.

[38] *See* D.I. 24 at 23.

[39] D.I. 24, Ex. F and Ex. G.

[40] D.I. 24 at 23; D.I. 24, Ex. D and Ex. E.

[41] D.I. 30 at 3.

[42] D.I. 24, Ex. A at § 1.06(h).

However, if the Sellers and the Company cannot reach a final resolution within 30 days after the delivery of an Objections Statement, the Parties may submit each unresolved objection to a mutually agreed-upon accounting firm that has no prior relationship with the Company, with the Sellers, or with the Purchaser (hereinafter, the "Accounting Firm").[43] Meanwhile, Section 1.06(i) details how the Parties will bear the fees and expenses of the Accounting Firm should such arbitration be necessary.[44]

Under the Arbitration Provision, the Accounting Firm "shall consider only the unresolved objections" included in the Objections Statement, and the Accounting Firm's determination (hereinafter, the "Final Closing Consideration") shall be "based solely on written presentations submitted by the Company and the Sellers which are in accordance with the guidelines and procedures (including the definitions of each component of the Closing Consideration and the Balance Sheet Rules) set forth in this Agreement (i.e., not on the basis of an independent review)."[45] Under Section 1.06(h), the Accounting Firm's Final Closing Consideration

---

[43] *See* D.I. 24, Ex. A at § 1.06(h).

[44] *See* D.I. 24, Ex. A at § 1.06(i) ("The fees and expenses of the Accounting Firm shall be allocated between the Purchaser, on the one hand, and the Sellers, on the other hand, based upon the percentage by which the portion of the contested amount not awarded to each Party bears to the amount actually contested by such Party in the written presentation to the Accounting Firm and will be settled solely by the Purchaser and the Sellers within ten (10) days after the dispute has been finally resolved.").

[45] D.I. 24, Ex. A at § 1.06(h).

"constitute[s] an arbitral award" that is "final and binding upon all Parties upon which a judgment may be rendered by a court having proper jurisdiction thereover."[46]

In early February 2024, the Parties discussed how this dispute may need to proceed through arbitration and discussed selecting an accounting firm to arbitrate.[47] On April 11, 2024, the Parties jointly engaged BDO USA, P.C. (hereinafter, "BDO" or the "Arbitrator") to resolve their disputes as they related to the Post-Closing Adjustment.[48] Plaintiffs then submitted an Objections Statement outlining objections to the Closing Statement on April 18, 2024, which did not mention the issue of the Defendants submitting a Closing Statement after the 90-day deadline.[49]

On August 20, 2024, BDO issued its final arbitration award and findings, deciding in favor of the Defendants, ordering the Sellers to pay $1,727,438 (hereinafter, the "Arbitration Award").[50] The Arbitrator did not rule on the issue of the Company's failure to timely deliver a Closing Statement, stating that because "Purchaser and Sellers' compliance with the provisions of the Agreement regarding

---

[46] D.I. 24, Ex. A at § 1.06(h).

[47] *See* D.I. 24, Ex. H.

[48] D.I. 24, Ex. B; D.I. 17 at ¶ 23.

[49] *See* D.I. 24, Ex. I.

[50] *See* D.I. 24, Ex. C at 19 (totaling $1,727,438 that Sellers would have to pay to Purchaser); *see also* D.I. 24, Ex. C. at 6–18 (discussing each disputed item within the arbitration, and BDO's finding in favor of Purchaser for each disputed item).

delivery of the Closing Statement and the Objections Statement, respectively, was not raised by Plaintiffs in an Objections Statement, I find consideration of these allegations outside of the Accounting Firm's authority for purposes of this determination."[51]

Defendants issued a letter to the Plaintiffs on September 6, 2024, demanding payment in the amount of $1,132,041.61, which represents the difference in the amount due from the arbitration award and the amount Defendants are obligated to pay from the Amended Promissory Notes, the Holdback, and the Earn-Out Payments.[52] On September 19, 2024, after not receiving the requested payment from the Plaintiffs, the Defendants counsel sent a final demand for payment.[53] To date Plaintiffs have not paid Defendants the Arbitration Award.[54]

### D. Procedural Posture

Plaintiffs filed the complaint on October 11, 2024, requesting that the Court vacate the Arbitration Award and modify or correct the Arbitration Award in whole or in part.[55] The Plaintiffs also request that the Court grant declaratory judgment that: (i) Defendant William J. Mellor is foreclosed from receiving a Post-Closing

---

[51] D.I. 24, Ex. C at 5.

[52] D.I. 24, Ex. F at 2.

[53] D.I. 24, Ex. G.

[54] D.I. 17 at ¶¶28–29.

[55] *See* D.I. 1 at 13–14.

11

Judgment or Final Closing Consideration; and (ii) Defendant William J. Mellor must pay any money owed to Plaintiffs under the SPA that were offset by this dispute.[56] On December 3, 2024, the Defendants, William J. Mellor and the Company, answered Plaintiffs' complaint and filed a counterclaim seeking confirmation of the Award and an order requiring that Plaintiffs perform their obligations under the SPA.[57]

On December 23, 2024, the Plaintiffs answered Defendants' counterclaim by asserting affirmative defenses including, but not limited to, estoppel, waiver, unclean hands, and laches.[58] The same day, the Plaintiffs filed an amended complaint also requesting that the Court award damages for Defendants' contractual breaches of the SPA and the Amended Promissory Notes, require Defendants to provide Plaintiffs with the Company's quarterly financial statements since September 2023, and require the Purchaser to provide Plaintiffs with his personal annual financial statements.[59]

On January 14, 2025, the Defendants filed a motion for judgment on the pleadings.[60] On the same day, the Defendants answered Plaintiffs' amended

---

[56] *See* D.I. 1 at 14.

[57] *See* D.I. 6 at 26–27.

[58] *See* D.I. 10 at 20–21.

[59] *See* D.I. 11 at 26–27.

[60] D.I. 15.

complaint by asserting affirmative defenses including, but not limited to, failure to state a claim, estoppel, waiver, unclean hands, and laches.[61] On January 16, 2025, the Plaintiffs answered Defendants' verified counterclaims by asserting affirmative defenses including, but not limited to, estoppel, waiver, unclean hands, and laches.[62]

On February 14, 2025, Defendants filed their opening brief in support of their motion for judgment on the pleadings.[63] On March 14, 2025, Plaintiffs filed and briefed their own motion for judgment on the pleadings.[64] Defendants filed the answering-reply brief in opposition to Plaintiffs' motion for judgment on the pleadings and in support of their own motion for judgment on the pleadings on March 28, 2025.[65] Plaintiffs' reply brief was filed on April 11, 2025.[66] A telephonic oral argument was held on July 11, 2025, after which I took the matter under advisement.[67]

## II. ANALYSIS

The Court will grant a motion for judgment on the pleadings only where no material issues of fact exist, and the movant is entitled to judgment as a matter of

---

[61] *See* D.I. 16 at 33–34.

[62] *See* D.I. 17 at 19–20.

[63] D.I. 24.

[64] D.I. 26.

[65] D.I. 30.

[66] D.I. 32.

[67] D.I. 37.

law.[68] "When there are cross-motions for judgment on the pleadings, the court must accept as true all of the non-moving party's well-pleaded factual allegations and draw all reasonable inferences in favor of the non-moving party."[69] Cross motions for judgment on the pleadings may suggest that no disputes of material fact exist, but they "do not act per se as a concession that there is an absence of factual issues."[70] "A motion for judgment on the pleadings requires the Court to consider not only the complaint or counterclaims but also the answer, affirmative defenses, and any documents integral thereto."[71] Although analytically a question of fact, the interpretation of language in a contract "'is treated as a question of law,' and 'judgment on the pleadings is a proper framework for enforcing unambiguous contracts.'"[72]

---

[68] *Lillis v. AT&T Corp.*, 896 A.2d 871, 879 (Del. Ch. 2005); Ct. Ch. R. 12(c).

[69] *OSI Sys. v. Instrumentarium Corp.*, 892 A.2d 1086, 1091 (Del. Ch. 2006) (citing *BAE Systems North America Inc. v. Lockheed Martin Corp.*, 2004 WL 1739522, at *3 (Del. Ch. Aug. 3, 2004)).

[70] *In re H.M. Mosher Trust Dated January 14, 1938*, 2018 WL 5430631, at *5 (Del. Ch. Oct. 29, 2018) (quoting *Anolick v. Holy Trinity Greek Orthodox Church, Inc.*, 787 A.2d 732, 738 (Del. Ch. (2001)).

[71] *Brex Inc. v. Su*, 2024 WL 2956861, at *1 (Del Ch. June 12, 2024) (citing *Jiménez v. Palacios*, 250 A.3d 814, 827 (Del. Ch. 2019)).

[72] *Standard General L.P. v. Charney, 2017 WL 6498063*, at *10 (Del. Ch. Dec. 19, 2017) (quoting *Pellaton v. Bank of New York*, 592 A.2d 473, 478 (Del. 1991); *NBC Universal v. Paxson Communications Corp.*, 2005 WL 1038997, at *5 (Del. Ch. Apr. 29, 2005)).

## A. The Federal Arbitration Act applies.

As a preliminary matter, I must first address the parties dispute over the applicability of the Federal Arbitration Act (hereinafter, the "FAA") or the Delaware Uniform Arbitration Act (hereinafter, the "DUAA"). "[T]he FAA serves as the default rule and displaces inconsistent provision of state arbitration acts, thereby relegating the DUAA . . . to 'the secondary role of governing agreements to arbitrate in intrastate commerce.'"[73] The DUAA "incorporates the terms of the Federal Arbitration Act unless the agreement at issue explicitly references the Delaware Uniform Arbitration Act."[74] Here, the SPA does not expressly invoke the DUAA; therefore, the FAA applies.[75]

## B. I do not find that the Defendants waived their right to post-closing adjustments because of their failure to timely deliver the Closing Statement.

The Plaintiffs cite to two cases in support of an argument that the untimely delivery of the Closing Statement grants Plaintiffs the right to avail itself of all post-closing adjustment procedure, arguing further that that right includes the ability to retroactively invalidate an arbitral award on the Closing Consideration and the

---

[73] *Leftkowitz v. HWF Holdings, LLC*, 2009 WL 3806299, at *4 (Del.Ch. Nov. 13, 2009) (quoting *Personnel Decisions, Inc. v. Business Planning Systems, Inc.*, 2008 WL 1932404, at *6 (Del. Ch. May 5, 2008)).

[74] *Meyers v. Quiz-Dia LLC*, 2016 WL 7048783, at *2 (Del. Ch. Dec. 2, 2016) (citing 10 Del. C. §§5702 (a), (c)).

[75] *See* D.I. 24, Ex. A.

resulting Post-Closing Adjustment. The first is *Hallisey v. Arctic Intermediate, LLC*, and the second is *Schillinger Genetics, Inc. v. Benson Hill Seeds, Inc.*.[76] Both cases stand for the general assertion that failure to timely deliver a closing statement can waive post-closing adjustment procedure, however there are factual distinctions to these cases that, although are informative to this case, lend to this Court finding for the Defendants on this issue.

In *Hallisey*, the Court specifies that because of the "[b]uyer's failure to timely file a Closing Date Report, the Post Closing Adjustment process cannot proceed."[77] The court, however, goes on to state that its reasoning for making this determination was because of its effect on a Closing Date Report that would hinder the seller's ability to "respond to or evaluate the calculations contained in the Closing Date Report" and have a reasonable opportunity to object formally or reconcile any dispute before arriving at the final closing adjustment.[78] Applying the same *Hallisey* consideration to this case allows this Court to determine that since Plaintiffs took an abundance of time, more than the originally allotted 30 days, to submit their objections to the closing statements and proceeded to engage willingly in the Post-

---

[76] *Hallisey v. Arctic Intermediate, LLC*, 2020 WL 6438990 (Del. Ch. Oct. 29, 2020) (ORDER); *Schillinger Genetics, Inc. v. Benson Hill Seeds, Inc.*, 2021 WL 320723 (Del. Ch. Feb. 1, 2021).

[77] *Hallisey,* 2020 WL 6438990, at *4.

[78] *Id.*

16

Closing adjustment procedure with the Arbitrator, then there is no underlying reasoning to stop, or in this case retroactively invalidate, the Post-Closing Adjustment procedure.[79]

Similarly, in *Schillinger*, the Court concludes that the buyer waived his right to the post-closing adjustment process by not completing timely delivery of the Closing Statement, but justifies its decision by citing to caselaw stating "[b]y failing to provide a Closing Statement, the Buyer prevented the Final Adjustment Amount from being determined in a timely fashion in accordance with the procedures set forth in the Agreement and thereby gave up its opportunity to have a Final Adjustment Amount that potentially came out in its favor."[80] Again, as stated above, this is not the case here. The Plaintiffs had sufficient time to defend their rights within the Post-Closing Adjustment procedure, and availed themselves of that right by submitting their Objection Statement and engaging in the process to obtain an arbitrator to resolve the objections.

Accordingly, I cannot find that Defendants waived its ability to the Post Closing Adjustment procedure. I also do not find it appropriate to retroactively deem

---

[79] D.I. 16 at ¶18 (indicating that the Closing Statement was delivered on August 2, 2023); D.I. 24, Ex. I (indicating that Plaintiffs submitted the Objection Statement on February 12, 2024).

[80] *Schillinger,* 2021 WL 320723, at *17 (quoting *J&J Produce Holdings, Inc. v. Benson Hill Fresh, LLC*, 2020 WL 1188052, at *3 (Del. Ch. Mar. 11, 2020)).

the Arbitrator's determination to be invalid because of the Defendants' untimely delivery.

###### C. The Arbitrator's decision is valid, and Plaintiffs will not be entitled to their request for vacatur of the arbitration award.

"[T]here is a presumption that the arbitrat[or] acted within the scope of its authority and this presumption may not be rebutted by an ambiguity in a written opinion."[81] "Arbitration awards . . . are not lightly disturbed, and 'Courts must accord substantial deference to the decisions of arbitrators.'"[82] The FAA allows for the vacatur of an arbitration award in very limited circumstances, providing that:

> In any of the following cases the . . . court . . . may make an order vacating the award upon the application of any party to the arbitration— (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.[83]

---

[81] *Optimis Corp. v. Atkins*, 2021 WL 2961482, at *13 (Del. Ch. Jul. 15, 2021) (quoting *TD Ameritrade, Inc. v. McLaughlin*, 953 A.2d 726, 732 (Del. Ch. 2008).

[82] *Id.*

[83] *Viacom Intern., Inc. Winshall*, 72 A.3d 78, 80 (Del. 2013 (citing 9 U.S.C. § 10(a)(1)–(4))).

This Court does "not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts."[84] Plaintiffs concede that they are not entitled to vacatur under sections 10(a)(1)–(3) of the FAA, and as discussed above the DUAA does not apply.[85] Accordingly, I will limit my analysis of Plaintiffs' request for vacatur of the arbitration award under what remains, section 10(a)(4).

"An arbitrator exceeds her authority when she decides an issue 'outside of those contained in the submission or if her actions are in direct contradiction to the express terms of the agreement of the parties."[86] An arbitrator who decides an issue beyond what is described in "1) the underlying agreement between the parties in which they agree to submit their disputes to arbitration and 2) the document containing the submission to the Arbitrator of the issues to be decided[,]" has exceeded her authority.[87]

The other instance for when an arbitrator exceeds her powers is through "a manifest disregard for the law[,]" however "the scope of the court's review in such

---

[84] *Evolve Growth Initiatives, LLC v. Equilibrium Health Solutions LLC*, 2023 WL 4760548, at *10 (Del. Ch. Jul. 26, 2023) (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).

[85] D.I. 26 at 18 n. 3.

[86] *Evolve,* 2023 WL at *10 (quoting *World-Win Mktg., Inc. v. Ganley Mgmt. Co.*, 2009 WL 2534874, at *2 (Del. Ch. Aug. 18, 2009)).

[87] *Malekzadeh v. Wyshock*, 611 A.2d 18, 21 (Del. Ch. 1992 (citing *Fagnani v. Integrity Fin. Corp.*, 167 A.2d 67, 70 (Del. Super. 1960))).

cases is extremely limited."[88] "To demonstrate that an arbitral award was rendered in disregard of the law such that the award should be vacated, the party seeking to vacate the award must demonstrate that "the arbitrator (1) knew of the relevant legal principle, (2) appreciated that this principle controlled the outcome of the disputed issue, and (3) nonetheless willfully flouted the governing law by refusing to apply it."[89] The evidence presented in towards these elements "must be 'something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law.'"[90]

The Arbitrator has not decided an issue that exceeds its scope of authority outlined in the SPA and the arbitration engagement letter.[91] The SPA indicates the arbitrators may only address unresolved objections to the Closing Statement that were included in the Objection Statement and states that "[t]he Accounting Firm's determination of the Closing Consideration and the resulting Post-Closing Adjustment shall . . . be final and binding upon all Parties upon which the judgment

---

[88] *Evolve,* 2023 WL at *10 (citing *Travelers Ins. Co. v. Nationwide Mut. Ins. Co.*, 886 A.2d 46, 48 (Del. Ch. 2005)); *see also SPX Corp. v. Garda USA, Inc.*, 94 A.3d 745, 750 (Del. 2014) ("Under the FAA, vacatur is authorized where the arbitrator acts in 'manifest disregard' of the law.").

[89] *Carl Zeiss Vision, Inc. v. Refac Holdings, Inc.*, 2017 WL 3635568, at *5 (Del. Ch. Aug 24, 2017) (quoting *Paul Green School of Rock Music Franchising, LLC v. Smith*, 389 Fed. Appx. 172, 177 (3d Cir. 2010)).

[90] *Id.* at *5 (quoting *TD Ameritrade,* 953 A.2d at 732).

[91] D.I. 24, Ex. B.

may be rendered by a court having proper jurisdiction thereover."[92] The engagement letter shows that the issues within the scope of the Arbitrator's decision making power are those relating to "certain disagreements related to the closing balance sheet of Miller-Remick as of March 22, 2022, and the Closing Consideration and the resulting Post-Closing Adjustment due to the Buyer, which they have been unable to resolve."[93]

The Arbitrator made a determination, resolving the objections to the Closing statement in favor of the Defendants, after determining it could not consider the Plaintiffs' argument about the untimely delivery of the Closing Statement because Plaintiffs did not raise the issue within their Objection Statement.[94] The BDO's inability to consider the timeliness argument is not because it is in itself outside the scope of issues assigned through the Arbitration Clause and the engagement letter but because the Plaintiffs failed to raise the issue before the arbitrator in their Objection Statement. The BDO's decision is ultimately within the scope of issues assigned to them in the Arbitration Clause and the engagement agreement.

As for the question of whether the Arbitrator exercised a manifest disregard for the law, I do not find that the Plaintiffs have met this high burden. The BDO

---

[92] D.I. 24, Ex. A at § 1.06(h).

[93] D.I. 24, Ex. B at 1.

[94] D.I. 24, Ex. C at 5.

acknowledges the timeliness issue presented by the Plaintiffs but then properly addresses it within the framework of powers it has been granted. They do this by determining the Plaintiffs failed to bring the argument because they did not raise the issue within the Objections Statement and therefore "find[ing] consideration of these allegations outside the Accounting Firm's authority for purposes of this determination."[95] The BDO acknowledges the issue, but then rightfully applies the associating provisions to make a determination that the Plaintiffs have lost their chance at making this argument by failing to provide it in their Objections Statement.

The Arbitrator took into consideration the late delivery and moved forward with issuing the award in Defendants' favor. I find it appropriate to deny Plaintiffs' request for vacatur of the Arbitration Award, as I do not find that they have met the high burden of proving that the BDO exceeded its authority or acted in manifest disregard of the law.

**D.      Defendants are in breach of the SPA and the Amended Promissory Notes for failing to timely pay certain payments due under those agreements and for failing to provide required financial statements.**

A plaintiff pleading breach of contract must prove by a preponderance of the evidence: "(1) the existence of a contract, (2) the breach of a contractual obligation,

---

[95] D.I. 24, Ex. C at 5.

and (3) resulting damages."[96] "The Agreement is the appropriate starting point for determining the rights and duties of the parties."[97] "When determining the scope of a contractual obligation and measuring the parties conduct against that obligation to determine breach, 'the role of a court is to effectuate the parties' intent.'"[98] "When interpreting a contract, this Court will give priority to the parties' intentions as reflected in the four corners of the agreement, construing the agreement as whole and giving effect to all its provisions."[99]

### 1. Defendants are in breach of the SPA and Amended Promissory Notes for failure to make certain payments due to Plaintiffs.

In light of section 1.04(c) of the SPA, a Holdback Amount exists representing "the cash portion of the Closing Consideration" retained by the Defendants "to be paid to Sellers at Closing[,]" released under Section 1.06.[100] Plaintiffs claim to be entitled to a Holdback in the amount of $125,000, alleging that the Defendants are

---

[96] *Anschutz Corp. v. Brown Robin Capital, LLC*, 2020 WL 3096744, at *9 (Del. Ch. June 22, 2020) (citing *Pharm. Prod. Dev., Inc. v. TVM Life Sci. Ventures VI, L.P.*, 2011 WL 549163, at *2 (Del. Ch. Feb. 16, 2011)).

[97] *Georgetown Crossing LLC, v. Ruhl*, 2006 WL 3720134, at *6 (Del. Ch. Dec. 5, 2006).

[98] *In re Anthem-Cigna Merger Litigation*, 2020 WL 5106556, at *90 (Del. Ch. Aug. 31, 2020) (quoting *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006)).

[99] *North American Leasing, Inc. v. NASDI Holdings, LLC*, 276 A.3d 463, 467 (Del. 2022); *see also Alta Berkeley VI C.V. v. Omneon, Inc.*, 41 A.3d 381, 385 (Del. 2012) ("Unless there is ambiguity, Delaware courts interpret contract terms according to their plain, ordinary meaning.").

[100] D.I. 24, Ex. A at § 1.04(c).

in breach of the SPA for failing to pay the Holdback Amount.[101] The Defendants do not dispute the amount but argue the entire Holdback Amount should be released to them because the Post-Closing Adjustment is a negative number.[102] Section 1.06(d) of the SPA directs that when the Post-Closing Adjustment is a negative number, then the Defendants are to release the Holdback Amount to itself.[103] Accordingly, I agree with Defendants that they were entitled to withhold the Holdback Amount due to the negative Post-Closing Adjustment and therefore do not find this conduct to be a breach of the SPA.

Plaintiffs argue that the Company is currently in breach of the SPA for failing to make payments due under the Amended Promissory Notes, under Sections 1.02 and 2.03 of the SPA, alleging each Plaintiff is due $233,925,41 plus interest.[104] Plaintiffs claim Defendants have failed to pay the Earn-Out Payments due under the SPA, alleging they are owed $84,145.26 plus interest.[105] Defendants do not dispute that Plaintiffs are entitled to the Earn-Out Payments or the Payment due under the Amended Promissory Notes.[106] Defendants argue they have the right to withhold

---

[101] D.I. 11 at ¶¶55–59; D.I. 26 at 17–18.

[102] D.I. 30 at 12.

[103] D.I. 24, Ex. A at 1.06(d).

[104] D.I. 11 at ¶¶74–75; D.I. 24, Ex. A at §1.02 and §2.03.

[105] D.I. 11 at ¶¶76–77; D.I. 24, Ex. A at §§ 1.09(a)–(b).

[106] D.I. 24 at 23.

their obligatory payments because of a set-off provision in the SPA which incorporates the Amended Promissory Notes.[107] Plaintiffs argue first that the set-off provision only applies to the Earn-Out Payments and does not apply to any amount due under the Holdback Amount or the payments due under the Amended Promissory Notes.[108] I agree with Plaintiffs' statement about the application of the set-off provision, as section 1.09 specifically covers terms relating to the Earn-Out Payments.[109] I, accordingly, find Defendants to be in breach for failing to pay what is due under the Amended Promissory Notes as the set-off provision does not apply to those obligations.

Finally, Plaintiffs cite to caselaw they claim negates the Defendants' ability to invoke the set-off provision because until the Arbitration Award has been confirmed by the Court it qualifies as a claim and not a judgment and "[t]here is no right to set-off a possible unliquidated liability against a liquidated claim that is due and payable."[110] Defendants draw a distinction to these cases cited by Plaintiffs, in particular *Tenet Healthcare Corporation v. Steward Health Care System LLC*, pointing out that the language was limited to "any amounts due and payable" yet

---

[107] D.I. 30 at 12; D.I. 24, Ex. A at § 1.09(d).

[108] D.I. 32 at 19 n.2.

[109] D.I. 24, Ex. A at §1.09.

[110] D.I. 26 at 33 (quoting *CanCan Development, LLC v. Manno*, 2011 WL 4379064, at *5 (Del. Ch. Sept. 21, 2011)).

25

here the set-off provision specifies that the Defendants have a set-off right "[t]o the extent any obligation of the Sellers . . . has not been satisfied."[111] I do not find this distinction compelling. "Set-offs are 'properly taken only as to judgments, not claims[,]'" and the set-off provision does not grant Defendants the right to set-off the due Earn-Out payments against the Arbitration award that has yet to become a judgment confirmed by this Court.[112]

I find Defendants to be in breach for not paying the amounts due under the Amended Promissory Notes and the Earn-Out payments. The Defendants are not in breach for their failure to pay the Holdback Amounts.

### 2. Defendants are in breach of the Amended Promissory Notes for failing to provide the required financial documentation.

Plaintiffs assert that Defendants failed to fulfill their obligation under section 5 of the Amended Promissory Notes requiring they issue within 45 days of the end of each quarter, a "current internal, unaudited quarterly financial statement."[113] Defendants do not address these claims in their briefing and only deny the allegations

---

[111] D.I. 30 at 13; D.I. 32 at 19; *Tenet Healthcare Corporation v. Steward Health Care System LLC*, 2023 WL 2778295, at *3 (Del. Ch. Apr. 4, 2023); D.I. 24, Ex. A at § 1.09(d).

[112] *IronRock Energy Corp. v. Point LNG, LLC*, 2021 WL 3503807, at *8 (Del. Ch. July 19, 2021) (quoting *Seilbold v. Comulos Partners LP*, 2012 WL 4076182, at *24 n. 233 (Del. Ch. Sep. 17, 2012)); *see Pryor v. IAC/InterActiveCorp, 2012 2046827*, at *6 (Del. Ch. June 12, 2012) ("[I]n most cases the confirmation of an arbitration award is a summary proceeding that makes what is already a final arbitration award a judgment of the Court.").

[113] D.I. 11 at ¶88–90.

26

in their answer.[114] The Amended Promissory Notes require Defendants to provide, within 45 days of the end of each fiscal quarter and within 90 days of the end of each fiscal year, certain financial documents of the Company and its subsidiaries.[115] Plaintiffs' claim to have not been provided the financial documents since July 2023 and Defendants have not put any evidence or claims forward that proves this not to be a true statement.[116] I find that the Defendants' failure to provide financial documents after July 2023 to be a breach of the Amended Promissory Notes for failing to fulfill their obligations to provide quarterly and yearly financial documentation.

### E. Defendants' request for this Court to Confirm the Arbitration Award is granted.

"[W]ithin one year after the arbitration award is made, any party to arbitration may apply to the court . . . for an order confirming the award, and thereupon the court must grant such order unless the award was vacated, modified, or corrected."[117] "The Supreme Court has explained that only the statutorily enumerated circumstances in the FAA provide grounds for a court to grant vacatur or

---

[114] D.I. 16 at ¶¶ 50–54.

[115] D.I. 24, Ex. D at § 5; D.I. 24, Ex. F at § 5.

[116] D.I. 26 at 31.

[117] 9 U.S.C. § 9.

27

modification of an arbitration award."[118] As already described in depth above, the Plaintiffs are not entitled to vacatur of the Arbitration award and no argument has been made to support a need for its modification. Defendants are therefore entitled to their requested relief of confirmation of the arbitration award from the BDO and I find it appropriate to order the Plaintiffs' final closing payment is due under the parties' agreement.

### F.    Attorneys' Fees and Costs

Plaintiffs argue they are entitled to reasonable attorneys' fees and expenses pursuant to a term in the Amended Promissory Notes.[119] Delaware follows the American rule which states that "[l]itigants are normally responsible for paying their own litigation costs."[120] An "exception to the American rule 'is found in contract litigation that involves a fee shifting provision.' When a contract contains a fee shifting provision, Delaware courts will enforce that provision."[121]

Section 6 of the Amended Promissory Notes states that "[w]henever an attorney is used to obtain payment under, or to otherwise enforce, this Note or to

---

[118] *MHP Management, LLC v. DTR MHP Management, LLC*, 2022 WL 2208900, at *3 (Del. Ch. June 21, 2022) (citing *Hall St. Assocs. V. Mattel, Inc.*, 552 U.S. 576, 584 (2008)).

[119] D.I. 11 at ¶91.

[120] *Mahani v. Edix Media Gp., Inc.*, 935 A.2d 242, 245 (Del. 2007).

[121] *GB-SP Holdings, LLC v. Walker*, 2024 WL 4799490, at *24 (Del. Ch. Nov. 15, 2024) (quoting *Bako Pathology LP v. Bakotic*, 288 A.3d 252, 280 (Del. 2022)) (internal citation omitted).

enforce, declare, or adjudicate any rights or obligations under this Note, whether by suit or by any other means whatsoever, the costs and expenses thereof, including reasonable attorneys' fees and expenses, shall be payable by the non-prevailing party."[122]

Given that Plaintiffs did not substantially prevail on its claims before this Court, and the limited application of the fee shifting provisions to those claims relating to the Amended Promissory Note, I do not find it appropriate to grant Plaintiffs request. I also do not find Defendants' request for fee shifting to be viable, as they do not plead specifically to the source of their right and limit their request for attorneys' fees as permitted by applicable law, and I do not find an exception to the American rule applicable here.[123]

## III.   CONCLUSION

Plaintiffs request for this Court to vacate the arbitration award is denied and Defendants request to confirm the arbitration award is granted. The Plaintiffs must therefore perform their obligation of payment of final closing. I find that the Defendants are liable for breach of contract, but only for their failure to pay the payments due under the Amended Promissory Notes and Earn-Out Payments, and for their failure to fulfill their obligation to provide quarterly and annual financial

---

[122] D.I. 24, Ex. D at §6; S.I. 24, Ex. E at §6.

[123] D.I. 6.

information. This is my final report, and exceptions may be filed under Court of Chancery Rule 144.[124]

---

[124] *See* Ct. Ch. R. 144(d)(1) (In "[a]ctions that are not summary or expedited… [a] party taking exceptions must file a notice of exceptions within 11 days of the date of the Final report or Draft Report.").